IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BETTY D. PIERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:08cv809-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that she was unable to work because of a disability. His application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). The parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction**. Plaintiff Betty Pierson ("Pierson") was 36 years old at the alleged date of onset and 38 years old at the time of the hearing before the ALJ. (R. 58, 576-77). She has a high school education. (R. 577). She has no prior work experience. (R. 9). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of

> status post fusion lumbar spine with mild stenosis; degenerative disc disease lumbar spine; left cervical radiculitis; questionable left carpal tunnel

---

cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

3

> syndrome; questionable meniscuis tear right knee; history of intermittent seizure disorder; and borderline intellectual functioning.

(R. 22). The ALJ also concluded that Pierson's moderate obesity, asthma, and history of gastric reflux did not constitute severe impairments. (*Id.*). Although the ALJ concluded that Pierson could perform her past relevant work as a sitter, (R. 30), the Appeals Council disagreed and concluded that she did not have any past relevant work. (R. 9). However, relying on the testimony of the vocational expert, the Appeals Council concluded that there were significant numbers of jobs in the national economy that Pierson could perform, and thus, she was not disabled. (*Id.*).

**B. Plaintiff's Claims**. As stated by the plaintiff, she presents the following three issues for the Court's review:

I. Neither the ALJ's nor the AC's RFC findings are based on substantial evidence.

II. The ALJ erred in his pain and credibility findings.

III. The ALJ erred in rejecting examining as well as treating physician opinion.

(Pl's Br. at 6 - 8).

## IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3)

subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The court must scrutinize the record in its entirety to determine the reasonableness of the ALJ's decision. *See Walker,* 826 F.2d at 999. The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments. Within this analytical framework, the court addresses the plaintiff's specific claims.

**1. Whether the ALJ or the AC erred in their RFC findings.** Pierson appears to argue that the ALJ in this case was bound by the RFC finding of an ALJ in a prior determination. In a 1999 decision, the plaintiff was deemed not disabled. (Pl's Br. at 2). She filed the present application for SSI benefits on June 21, 2004. According to the plaintiff, "[a]bsent medical improvement the findings of a prior ALJ become the administrative law of the case." (*Id*. at 6). Pierson cites no law in support of her position, and beyond her perplexing assertion that the present ALJ relied on the former ALJ's RFC findings, the plaintiff alleges no facts and points to no evidence in the record to support her position. For example, Pierson argues that "[f]or the ALJ to refer to and adopt any conclusions other than malingering made by Judge Carnes [in 1999] . . . suggests that the current ALJ at best selectively reviewed the evidence of record for the intervening period of seven years." (*Id*. at 7). While the present ALJ referred to the findings of the former ALJ

5

in the 1999 determination, the present ALJ did not adopt any findings of the prior ALJ, and specifically did not conclude that Pierson was malingering.

The burden is on the plaintiff to demonstrate that the Commissioner's decision is not supported by substantial evidence, and the argument of counsel is simply insufficient to meet this burden. *See generally Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (It is not the court's responsibility to seek out facts in support of the plaintiff's position.) More importantly, however, the court has reviewed the ALJ's decision in its entirety and concludes that the ALJ's references to the 1999 determination were merely illustrative recitations of the administrative history of Pierson's claim. The ALJ properly limited his consideration of Pierson's disability claim to her 2004 application, and a review of the ALJ's determination demonstrates that he did not improperly rely on the 1999 RFC finding.

**2. Whether the ALJ failed to properly consider the Eleventh Circuit three-part pain standard.** Next, Pierson argues that the ALJ failed to properly apply the law of this circuit to discredit her pain testimony. After citing to selective medical records, Pierson again challenges the ALJ's reference to malingering. (Pl's Br. at 8). The court is unable to ascertain the basis of the plaintiff's challenge as the ALJ does not accuse the plaintiff of malingering. Nonetheless, the court will address the ALJ's pain and credibility analysis.

"Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir.

1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553. In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons must be supported by substantial reasons. If there is no such support then the testimony must be accepted as true. *Hale*, 831 F.2d at 1012.

At the administrative hearing, the plaintiff testified that she is disabled due to her seizures and chronic pain in her back and side. (R. 579). She testified that she has seizures while she sleeps and she does not remember them. (R. 579-80). She further testified that she has arthritis in her back as a result of three back surgeries. (R. 580). Finally, she testified that she cooks, does the grocery shopping, but she does not do housework. (R. 578).

7

The ALJ discredited the plaintiff's testimony of disabling pain and functional restrictions. (R. 28-30).

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could be reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning intensity, persistence and limiting effects of these symptoms are not entirely credible.

(R. 29). If this were the extent of the ALJ's credibility analysis, the plaintiff might be entitled to some relief. However, the ALJ continued his analysis and discredited the plaintiff's testimony based on the following.

> As for the opinion evidence, the claimant testified that she has seizures while she is asleep. This, then, would not appear to affect a normal work day, most of the time. The claimant appears to have a compliance problem with medication for her seizures and seizure disorder appears to be stable while on medication. Specifically, records from Dr. Hakim indicate that on October 22, 2002, she reported no problems with seizures and doing okay on Dilantin. On 11-28-00 she reported no more seizures. On 12-05-00 she reported no problems with seizures. On 04-17-01 she reported no seizures. On 05-16-01 she reported no seizure activity. She had an EEG performed and it demonstrated no epileptic activity. On 08-29-01 she reported no seizures and doing reasonably well on Dilantin. On 01-16-02 she reported having four seizures. She was taken to the ER and found to have had no Dilantin in her system. As a matter of fact, her level was zero. She was placed back on medication and her seizures were better controlled. On 05-07-02 she reported no seizures. On 08-20-02 she reported doing well with medication. On 10-22-02 she reported doing well with no seizures. (Exhibit C-4F). On 07-11-06 she reported that she has had several seizures back to back a month ago. Her Dilantin level was subtherapeutic as before and she was given Dilantin 1000 mg IV. She was diagnosed with multiple seizures related to incompliance (sic) (Exhibit C-13F). The assessment of Dr. Combs dated March 21, 2007, indicates that the claimant stated that her last seizure was on Father's Day, last year. Dr. Combs noted that the claimant's effort during the exam was described as poor. Dr. Combs diagnosed seizures controlled by Dilantin. Dr. Combs was of the opinion that there is very little limitation in doing work-related activity except for that caused by a lack of physical training. Dr.

8

> Combs indicated that sitting and standing or walking or lifting or carrying or handling objects up to five pounds should be possible (Exhibit C-24F). The claimant has had no further treatment in the emergency room related to her seizures. Also Dr. Evans testified that the claimant has a compliance problem with regard to her seizure disorder. I find that the claimant is not fully credible, and not disabled based on her own testimony as she has exaggerated her symptoms.

(R. 29-30).

The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt,* 921 F.2d at 1223. The ALJ's reasons for discrediting the plaintiff's testimony of pain and disability were both clearly articulated and supported by substantial evidence. *Id.* Relying on the treatment records, objective evidence, and Pierson's own testimony, the ALJ concluded that her allegations regarding the extent of her pain were not credible and discounted that testimony. After a careful review of the record, the court concludes that the ALJ properly discounted the plaintiff's testimony and substantial evidence supports the ALJ's credibility determination. It is undisputed that the plaintiff suffers from pain. In determining her residual functional capacity, the ALJ specifically considered that Pierson suffered from "mild/moderate pain which occasionally interferes with concentration, persistence, or pace." (R. 27). However, the ALJ concluded that while Pierson's underlying conditions are capable of giving rise to some pain and other limitations, her impairments are not so severe as to give rise to the disabling intractable pain as she alleged.

The medical records support the ALJ's conclusion that while Pierson has conditions that could reasonably be expected to produce pain, Pierson was not entirely credible in her

9

description of that pain. For example, when applying for disability, Pierson said "her back bothered her before when she got disability but that her back is okay now. She says she is presently unable to work due to asthma and seizures." (R. 68). On January 16, 2002, Pierson complained to Dr. Hakim that she was having lower back pain, but he concluded that it was "mild to moderate." (R. 179). Although Pierson had difficulty bending forward, she was about to squat and her gait was steady. (*Id*.) On March 21, 2007, Pierson underwent a physical consultative examination. (R. 557-561). She had "slight scoliosis with convexity to the left." (R. 558). She exhibited "no spasm or detectable limitation of motion except for some mild rigidity in the lumbar area." (*Id*.) Her gait was normal and an x-ray of the cervical spine was normal. (*Id*.) After a careful review of the record, the court concludes that the ALJ's reasons for discrediting the plaintiff's testimony were both clearly articulated and supported by substantial evidence.

To the extent that the plaintiff is arguing that the ALJ should have accepted her testimony regarding her pain, as the court explained, the ALJ had good cause to discount her testimony. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

3**. Whether the ALJ improperly rejected the examining and treating physicians' opinions.** The plaintiff argues that the ALJ improperly rejected her treating physician's opinion that her pain would preclude her from working. (Pl's Br. at 9). On December 26, 2006, Dr. Temple completed a physical capacities evaluation, a clinical assessment of pain,

and a clinical assessment of fatigue and weakness. (R. 505-509). Dr. Temple opined that Pierson had pain "to such an extent as to be distracting to adequate performance of daily activities or work." (R. 506). Dr. Temple indicated that the plaintiff could sit for 2 hours and stand for 2 hours. (R. 505). He also indicated that she could occasionally exert push/pull movements and do fine manipulation. (*Id.*) She could never climb, do gross manipulation, bend, stoop, reach, operate motor vehicles or work around hazard machinery, dust, allergens or fumes. (*Id.*).

Of course, the law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in her regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-2; *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

However, there are limited circumstances when the ALJ can disregard the treating

physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Good cause may also exist where a doctor's opinions are merely conclusory; inconsistent with the doctor's medical records; or unsupported by objective medical evidence. *See Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr*, 816 F.2d at 581.

After reviewing all the medical records, the ALJ rejected the opinion of Dr. Temple because "his medical records do not support the RFC and Pain Form that he gave . . . [h]is opinion is not supported by his own clinical examinations and testing, and it is inconsistent with the record as a whole." (R. 28). Dr. Temple's own medical records do not support his opinion that Pierson suffers from unrelenting disabling pain. Dr. Temple treated Pierson from January 14, 2004 until December 4, 2006. (R. 470 - 473). Over the course of his treatment, Dr. Temple saw Pierson in August 2004, September 2004, January 2005, April

12

2005, July 2005, August 2005, February 2006, May 2006, June 2006, September 2006 and December 2006. (*Id*.) During the same period, Pierson missed eight (8) appointments. (*Id*.). A review of Dr. Temple's records indicate that the majority of the appointments were follow up visits to monitor Pierson's medications. For example, in 2004, Dr. Temple treated Pierson's asthma and prescribed Dilantin for her seizure disorder. (R. 473). On January 7, 2005, Pierson complained of lower back pain and Dr. Temple prescribed heat and Sulindac. (*Id*.) He also continued her on Dilantin for her seizures, Zantac for her reflux, and Flovent and Combivent for her asthma. (*Id*.). In 2005, Dr. Temple followed Pierson's seizure disorder, reflux, asthma and treated her for vaginal discomfort. (R. 472-73). Dr. Temple continued to treat Pierson for seizure disorder, asthma, reflux and low back pain during 2005 and 2006. (R. 470-71). She was also seen in August 2005 for knee pain after falling at Wal-Mart. (R. 454, 488, 471-72).

The medical records as a whole do not support Dr. Temple's opinion that the plaintiff suffers from unrelenting disabling pain. During the same time period, Pierson was referred to Dr. Hakim at the Greystone Neurology and Pain Center. (R. 430-434). On November 15, 2005, Dr. Hakim reported that Pierson presented to him complaining of neck and arm pain. (R. 432-33). According to Dr. Hakim, Pierson stated "that she had fallen at Walmart in July of 2005 and injured her knee at that time and started to having neck pain." (R. 432). While she had tenderness at the base of the neck, her neck flexion and extension were adequate. (R. 433). Dr. Hakim prescribed BioFreeze cream for her neck. (R. 434).

On March 21, 2007, Pierson underwent a consultative examination by Dr. Robert

13

Combs. (R. 557-558). She reported to Dr. Combs that she suffered from low back pain. (R. 557). Dr. Combs reported that her "effort was poor." (*Id*.) She had no back spasms and full range of motion in all joints. (*Id*.) An x-ray of her lumbosacral spine revealed "[p]ost surgical fusion of the lumbar spine, with some mild scoliosis." (R. 558). An x-ray of her cervical spine was normal. (*Id*.) Dr. Combs opined that Pierson could walk and sit without limitation but could only stand for 30 minutes at a time for a total of 4 hours per day. (R. 559). Dr. Combs noted Pierson's low back pain and obesity on his medical source opinion form. (*Id*.). Based upon its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ's rejection of Dr. Temple's opinion that Pierson suffers from intractable disabling pain is supported by substantial evidence.

Finally, to the extent that the plaintiff argues that the ALJ failed to consider her obesity in his disability determination, she is entitled to no relief on this basis. The plaintiff's argument, in its entirety, is as follows.

> Moreover, Dr. Combs' MSO as to postural and environmental restrictions was based specifically on low back pain and obesity. (R. 560-561). The ALJ appears to have circumvented the need to factor in obesity by eliminating it from consideration as a severe impairment or under the guidelines of SSR 02-1p. This Ruling recognizes that obesity can cause limitations in all exertional and postural functions; that it can affect an individual's ability to sustain routine movement and work activity. The Ruling particularly recognizes that obesity makes it harder for the chest and lungs to expand, forcing the respiratory system to work harder to provide oxygen to the body, in turn making the heart work harder to pump blood to carry oxygen to the body. The Ruling recognizes that an obese person's body has to work harder at rest, making it harder to perform additional work. The Ruling further recognizes that obesity can complicate and exacerbate exertional and non exertional conditions. A copy of this Ruling is attached, This component of the alleged later disability alone distinguishes it from the first and makes the ALJ's

14

findings of a higher RFC unlikely.

(Pl's Br. at 10). Beyond this broad, generalized statement about obesity, Pierson alleges no facts and points to no evidence in the record in support of her position that her obesity impinges on her ability to work. The burden is on the plaintiff to demonstrate that the Commissioner's decision is not supported by substantial evidence, and the argument of counsel is insufficient to meet this burden. More importantly, however, the court concludes that the ALJ considered the plaintiff's obesity on her ability to perform work. In determining Pierson's residual functional capacity, the ALJ determined that she could only occasionally bend, stoop, kneel, crouch, crawl or balance. (R. 27). Thus, the ALJ met any responsibility to consider the effect of Pierson's obesity on her ability to work.

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

Done this 16th day of February, 2010.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE